# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **NEBRASKA MEDICAL CENTER,** | ) | |
| | ) | |
| Plaintiff, | ) | 8:07CV56 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| **ELIZABETH PAYNE, in her own behalf** | ) | |
| **and as Conservator of the** | ) | |
| **Estate of Nicholas Payne, a minor, and** | ) | |
| **HAUPTMAN, O'BRIEN, WOLF &** | ) | |
| **LATHROP, P.C.,** | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the plaintiff's Motion for Summary Judgment (Filing No. 34). The plaintiff filed a brief (Filing No. 35) and an index of evidence (Filing No. 36) in support of the motion. The defendants did not respond to the motion. For the reasons stated below, the court concludes the plaintiff's motion for summary judgment should be granted.

## INTRODUCTION

The plaintiff brings this action to recover $157,344.98 in medical and hospital expenses paid under its group medical plan for injuries to Nicholas Payne, an insured dependent of the plaintiff's employee, Elizabeth Payne (Payne). The plaintiff's health plan was enacted pursuant to the Employee Retirement Income Security Act of 1974 (ERISA). This action comes after Payne obtained funds from third parties who were responsible for payment stemming from the motor vehicle accident causing injuries to Nicholas Payne. Payne received settlement proceeds totaling $300,000, which have been segregated in the trust account of Payne's counsel, Hauptman, O'Brien, Wolf & Lathrop, P.C. (Hauptman O'Brien) pending resolution of this action. The plaintiff seeks recovery under theories of Constructive Trust (Count I), Restitution (Count II), and Specific Performance (Count III). **See** Filing No. 1 - Complaint. In their answers, the defendants generally deny liability on the plaintiff's claims. **See** Filing Nos. 4 and 5. Additionally, the defendants deny the

medical plan at issue was an ERISA plan because, they contend, the plaintiff is a governmental entity or is an agent or instrumentality of a governmental entity as defined by ERISA, 29 U.S.C. § 1003(b)(1). *Id.* (referencing 29 U.S.C. § 1002(32)). Finally, the defendants assert Hauptman O'Brien is not a proper party to the lawsuit. *Id.*

The plaintiff seeks summary judgment on the plaintiff's "claims for equitable relief granting restitution in the amount of $157,344.98 and imposing a constructive trust over those funds in the Hauptman O'Brien trust account directing that this amount be reimbursed to [the plaintiff]." **See** Filing No. 35 - Brief p. 14. The defendants filed no opposition to the plaintiff's motion. The undersigned magistrate judge is specially designated to exercise jurisdiction over this matter, pursuant to 28 U.S.C. § 636 and after the consent of the parties. **See** Filing No. 8.

## UNCONTROVERTED FACTS[1]

1. The plaintiff is a non-profit corporation organized and existing under the laws of the state of Nebraska for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. **See** Filing No. 36 Exhibit 1 - Owen Aff. ¶ 2; Exhibit 6 - Supplemental Requests for Admission Response No. 1.

2. Payne was at all times relevant employed by the plaintiff. Payne and her family, including her son Nicholas Payne, were at all relevant times insured under the plaintiff's self-funded ERISA health plan, group identification number G00049W4 (the Plan). *Id.* Exhibit 2 - Ponticello Aff. ¶¶ 2-3; Exhibit 2(A) - Summary Plan Description p. 104-105.

3. The Plan provided a right of reimbursement and/or subrogation to enforce recovery of any benefits paid to Payne or her covered dependents because of injury due to a third party's acts or omissions. The Plan further provided that such right of reimbursement or subrogation was not to be reduced even if the recovery does not provide

---

[1] The defendants did not object to any of the plaintiff's statements of fact, either formally or by way of argument. The uncontroverted facts listed in this order are based on the evidence before the court and those facts alleged by the plaintiff. Where the facts are uncontroverted, they are deemed admitted by the opposing party. **See** NECivR 56.1(b)(1).

2

full compensation, nor was it to be reduced for legal fees or costs incurred in seeking recovery. *Id.* Exhibit 2(A) - Summary Plan Description p. 88-89.

4. Payne's minor son Nicholas Payne, was injured in a motor vehicle accident on or about April 15, 2006. As a result of injuries sustained by Nicholas Payne in the accident, Payne incurred medical and hospital expense on the minor's behalf equaling or exceeding the amount of $178,891.00, which amounts were paid by the plaintiff under the Plan. *Id.* Exhibit 5 - Requests for Admission Response No. 7; Exhibit 6 -Supplemental Requests for Admission Response Nos. 8 and 9.

5. Payne, as parent and conservator of her son Nicholas Payne, retained Hauptman O'Brien to make claims against legally responsible persons or entities for the accident. *Id.* Exhibit 5 - Requests for Admission Response No. 10.

6. Payne, through Hauptman O'Brien settled claims arising from the April 15, 2006 accident for a total of $300,000. The amount of $200,000 was paid from the available automobile liability insurance covering Dominic Ernesti, the legally responsible driver. The additional $100,000 was paid from available underinsured motorist coverage. *Id.* Response Nos. 10 and 11.

7. The defendants have not paid the plaintiff's $157,344.98 subrogation lien. Rather, that sum has been deposited and segregated in Hauptman O'Brien's firm trust account pending the outcome of this action. *Id.* Response Nos. 15 and 16.

8. The plaintiff was not created by any state or public agency, but by private incorporators. *Id.* Exhibit 1(A) - Articles of Incorporation p. 2. The two member organizations of the plaintiff are the University of Nebraska Board of Regents (BOR) and Clarkson Regional Health Services, Inc. (CRHS). Id. Under the Joint Operating Agreement entered into by the parties, the plaintiff operates and staffs University and Clarkson Hospitals through its own employees. *Id.* Exhibit 1(C) - §§ 2 and 5. The plaintiff is governed by its own separate Board of Directors with equal participation by BOR and CRHS on the Board so as to prevent either of its members from controlling the plaintiff. *Id.* Exhibit 1(A) - Articles of Incorporation p. 4; Exhibit I(B) - Bylaws Art. IV. The plaintiff's officers are elected by the plaintiff's Board, rather than by the BOR or by any state agency. *Id.* Exhibit I(B) - Bylaws Art. V; Exhibit 1(C) - Joint Operating Agreement § 3.5. As such,

the plaintiff is not administered by individuals who are responsible to public officials or the general electorate.

9. The plaintiff has its own ERISA health plan (the Plan which is the subject of this action), its own retirement plan and its own self-insured workers' compensation insurance plan, each of which is separate and distinct from any plans covering employees of the state or University of Nebraska. *Id.* Exhibit 2 - Ponticello Aff. ¶¶ 4-6; Exhibit 2(A) - Summary Plan Description.

10. The National Labor Relations Board (NLRB) has previously exercised jurisdiction over the plaintiff in a 1998-1999 labor dispute over union representation. *Id.* Exhibit 3 - Barrett Aff.; Exhibit 3(A) - NLRB Order.

11. The plaintiff has never claimed to possess or sought to exercise the power of eminent domain or the power to tax. Nor does the plaintiff require city, county or state approval to borrow money or issue notes. *Id.* Exhibit 1 - Owen Aff. ¶ 6.

## LEGAL STANDARD

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); **see** *Nat'l Am. Ins. Co. v. W & G, Inc.*, 439 F.3d 943, 945 (8th Cir. 2006). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *Chambers v. Metro. Prop. & Cas. Ins. Co.*, 351 F.3d 848, 853 (8th Cir. 2003) (**quoting** *Anderson*, 477 U.S. at 248 ). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that

4

allows it to accomplish this purpose." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

Additionally, Rule 56(e)(2) provides:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must--by affidavits or as otherwise provided in this rule--set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

**See** Fed. R. Civ. P. 56(e)(2). A party seeking summary judgment bears the burden of informing a court "of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323 (**quoting** Fed. R. Civ. P. 56(c)); *Rodgers v. City of Des Moines*, 435 F.3d 904, 908 (8th Cir. 2006). In the face of a properly supported motion, the burden then shifts to the nonmoving party to "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *Murphy v. Missouri Dep't of Corr.*, 372 F.3d 979, 982 (8th Cir. 2004). A motion for summary judgment places an affirmative burden on the non-moving party to go beyond the pleadings and, by affidavit or otherwise, produce specific facts that show that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); *Janis v. Biesheuvel*, 428 F.3d 795, 799 (8th Cir. 2005).

Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

Additionally:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to

5

> affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response</u>.

**See** NECivR 56.1(b)(1) (emphasis in original).

## ANALYSIS

The plaintiff seeks reimbursement for benefits paid under the Plan, from the defendants who received settlement proceeds from a third party tortfeasor, to make restitution for the plan benefits paid. The plaintiff argues the defendants are required to pay certain proceeds to the plaintiff by the plain language of the Plan. The subject proceeds are being held by Hauptman O'Brien pending the outcome of this action. However, the defendants deny the medical plan at issue was an ERISA plan because, they contend, the plaintiff is a governmental entity or is an agent or instrumentality of a governmental entity as defined by ERISA.

ERISA authorizes a civil action by a plan "participant, beneficiary, or fiduciary . . . (B) to obtain other appropriate equitable relief . . . (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). ERISA does not apply to an employee benefit plan that is a governmental plan. 29 U.S.C. § 1003(b)(1). "The term 'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32). An "entity is a political subdivision if it is 'either (1) created directly by the state, so as to constitute departments or administrative arms of the government, or (2) administered by individuals who are responsible to public officials or to the general electorate.'" *Shannon v. Shannon*, 965 F.2d 542, 548 (7th Cir. 1992) (**quoting** *NLRB v. Natural Gas Utility District of Hawkins County, Tennessee*, 402 U.S. 600, 604-05 (1971)). Such test is based on the test used by the NLRB to determine whether an entity is a governmental subdivision, agency or instrumentality. *Id.* The undisputed evidence before the court shows the plaintiff is not a political subdivision or instrumentality. Significantly, the plaintiff

was established as a private non-profit corporation; the plaintiff was not created and is not controlled by any government entity or government officials; the plaintiff's employees are not governed by any governmental merit system; the plaintiff does not require city, county or state approval to borrow money or issue notes; the plaintiff has no power to tax, no power of eminent domain or other powers reserved for sovereign entities; the plaintiff maintains its own separate health insurance, workers compensation and retirement plans for its employees; and the NLRB has previously exercised jurisdiction over the plaintiff as a non-public entity. Thus, the court finds the Plan is not a governmental plan and the plaintiff is a fiduciary for the Plan under ERISA.

Under ERISA, an equitable remedy, including restitution, is appropriate relief "to restore to the plaintiff particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002). This is so particularly where the funds sought are "specifically identifiable" such as funds set aside and preserved by the defendants. *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 362-63 (2006). The plaintiff must also show the funds sought are owed under the terms of the plan. *Admin. Comm. of the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Shank*, 500 F.3d 834, 836 (8th Cir. 2007). "Ordinarily, courts are to enforce the plain language of an ERISA plan in accordance with its literal and natural meaning." *Id.* at 838 (internal quotations and citations omitted). Since an ERISA plan is to be enforced as written, no reductions to a fiduciary's recovery will be made on behalf a participant based on the "make whole" doctrine or to pay attorney fees or other costs of recovery. *Id.* at 839; **compare** *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 141 (8th Cir. 1997) (reduction of subrogation recovery in the amount of reasonable attorney's fee where plan was silent on the issue).

The applicable terms of the Third Party Reimbursement and/or Subrogation Section of the Plan are as follows:

> This provision applies if You or Your dependent is injured or sick as a result of the act or omission of a Third Party.
>
> **Definitions**
> For the purpose of this provision, the following terms have the following meanings:

**Reimbursement Rights** means the Plan's right to be reimbursed if:
> (a) The Plan pays benefits for You or Your dependent because of an Injury or Sickness caused by a Third Party's act or omission; and
> (b) You, Your dependent or the legal representative recovers an amount from the Third Party, the Third Party's insurer, an uncovered motorist insurer or anyone else by reason of the Third Party's act or omission. This recovery may be the result of a lawsuit, a settlement or some other act. The Plan is entitled to be paid out of any recovery, up to the amount of Plan benefits the Plan paid.

**Subrogation Rights**, as used in this provision, means the Plan's right to enforce recovery of any Plan benefits paid for You or Your dependent because of an Injury or Sickness caused by a Third Party's act or omission. The Plan is entitled to be paid out of any recovery, up to the amount of Plan benefits the Plan paid.

**Third Party** means another person or organization.

**Reimbursement Rights and Subrogation Rights**
If You or Your dependent has an Injury or Sickness caused by a Third Party's act or omission:
1. The Plan will pay benefits for that Injury or Sickness subject to the Plan's Reimbursement Rights and Subrogation Rights and on condition that You or Your dependent (or the legal representative of You or Your dependent):
> (a) will not take any action which would prejudice the Plan's Reimbursement Rights or Subrogation Rights; and
> (b) will cooperate in doing what is reasonably necessary to assist the Plan in enforcing the Plan's Reimbursement Rights or Subrogation Rights.

2. The Plan's Reimbursement or Subrogation Rights will not be reduced because:
> (a) the recovery does not fully compensate You or Your dependent for all losses sustained or alleged; or
> (b) the recovery is not described as being related to medical costs or loss of income.

> 3. The Plan may enforce the Plan's Reimbursement Rights or Subrogation Rights by filing a lien with the Third Party, the Third Party's insurer or another insurer, a court having jurisdiction in this matter or any other appropriate party.
> 4. The amount of the Plan's Reimbursement will not be reduced by legal fees or court costs incurred in seeking the recovery, unless the Plan agrees otherwise in writing.
> 5. The Plan may elect to charge any reimbursement due the Plan under this provision against any further benefit payments for You or Your dependent under this Plan. This will not reduce the Plan's right to be paid out of any recovery up to the amount of Plan benefits not yet reimbursed.

**See** Filing No. 36 Exhibit 2(A) - Summary Plan Description p. 88-89.

Here, the plaintiff seeks an equitable remedy, as opposed to imposing personal liability on either of the defendants. The funds sought are specifically identifiable and have been set aside and preserved by the defendants. Additionally, the plaintiff has shown it paid benefits under the Plan to Payne for the medical and hospital expense incurred due to the injuries sustained by Nicholas Payne. Payne received a settlement, in excess of the amounts paid by the plaintiff, from a responsible third party. Such funds are being held by Hauptman O'Brien in a trust account. The defendants have not paid the plaintiff's $157,344.98 subrogation lien. However, the applicable Plan provisions obligate Payne to reimburse the plaintiff from any judgment or settlement that she receives, up to the full amount the plaintiff paid on her behalf. Specifically, the Plan provides the Plan will pay benefits if an insured is injured by a Third Party, however the Plan is "entitled to be paid out of any recovery, up to the amount of Plan benefits the Plan paid." *Id.* p. 88. Further, the Plan's reimbursement will not be reduced because "the recovery does not fully compensate [the insured] for all losses sustained or alleged" or by legal fees or court costs. *Id.* §§ 2(a) and 4. Accordingly, the plaintiff has shown the funds sought are owed to the Plan under the terms of the Plan. In the absence of a genuine issue of material fact, there appears no genuine issues for trial to preclude summary judgment at this time. Upon consideration,

**IT IS ORDERED:**

1. The plaintiff's Motion for Summary Judgment (Filing No. 34) is granted.

2. Pursuant to Fed. R. Civ. P. 58, a separate judgment will be entered on this date in accordance with this Order.

3. The court imposes a constructive trust on the settlement proceeds currently held by Hauptman O'Brien in a firm trust account not to exceed $157,344.98.

4. Hauptman O'Brien is directed to deliver the proceeds currently held in the trust account not to exceed $157,344.98 to the plaintiff's counsel on behalf of the plaintiff.

Dated this 20th day of October, 2008.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge